269 N.J. Super. 449 (1994)
635 A.2d 998
WALTER HAYES AND INEZ WEST INDIVIDUALLY, AND AS NATURAL GUARDIANS FOR ANGIE HAYES, A MINOR, PLAINTIFFS-RESPONDENTS,
v.
PITTSGROVE TOWNSHIP BOARD OF EDUCATION, DEFENDANT-RESPONDENT, AND DURAND GLASS MANUFACTURING CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 23, 1993.
Decided January 4, 1994.
*451 Before Judges SKILLMAN, BILDER and WEFING.
*452 Rakoski & Ross, attorneys for appellant (Alexander W. Ross, Jr., on the brief).
Hanzawa & Melnicove, attorneys for respondents Walter Hayes and Inez West (Howard D. Melnicove, on the brief).
Bernadette A. Duncan, attorney for respondent Pittsgrove Township Board of Education (Richard T. Barth, on the brief).
The opinion of the court was delivered by WEFING, J.S.C. (temporarily assigned).
Is an employee's private health insurance plan entitled to seek reimbursement for the sums it expended for the medical care and treatment of an employee's minor daughter, when the reimbursement is sought from the settlement proceeds for that daughter's claim against a public entity for her injury? We are satisfied that it is not. We are further satisfied that in the context of this case that it may not seek such reimbursement directly from the employee. We thus affirm the result below.
Durand Glass Manufacturing Company, Inc. (Durand) appeals to this court from a declaratory judgment entered on November 6, 1992 in favor of the plaintiffs and the defendant Pittsgrove Township Board of Education (Board), which concluded that Durand had no right of subrogation in this matter.
Plaintiff Walter Hayes is an employee of Durand which maintains for its employees the Durand Glass Health and Welfare Plan (Plan). Walter Hayes's daughter Angie was injured in an accident on property owned by defendant Board. Walter Hayes and Inez West, his former wife, commenced this lawsuit to recover damages, suing the Board both individually, as Angie's parents, and as natural guardians for her benefit.
Angie Hayes required various forms of medical treatment for the injuries she received in the accident, and the Plan provided coverage to her father Walter Hayes for those medical expenses he incurred as a result. Thereafter, the Plan asserted a right to recoup the sums it had advanced for Angie's medical care and *453 treatment. It premised this alleged right on two theories: (1) that it had a claim of subrogation against the alleged tort feasor Board, and (2) that it had a contract with Walter Hayes for such reimbursement. The trial court concluded that the Plan was not entitled to be reimbursed for the payments it had made, either by way of subrogation or directly from Walter Hayes, and this appeal resulted.
The plaintiffs' claims against the Board of Education have been settled in the amount of $350,000 and a "friendly" has been held pursuant to R. 4:44-3 to approve the terms of that settlement. That judicial approval is reflected in an order dated December 18, 1992. The terms of the settlement are, however, specifically contingent upon the results of the instant appeal and the order of December 18, 1992 reflects that contingency.
Because the defendant Board is a public entity, the Plan's entitlement to pursue a claim of subrogation must be measured under the Tort Claims Act. N.J.S.A. 59:1-1 et seq. N.J.S.A. 59:9-2(e) provides:
If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee. (emphasis added)
Durand advances several arguments on this appeal. It goes to great lengths to argue that the Plan is not an insurance company, but rather a non-profit employee benefit plan. It contends that to bar the Plan from recovery in this instance would not advance the policies behind N.J.S.A. 59:9-2(e), since the public entity is, in fact, insured by a commercial insurance company. It further argues that the statute bars subrogation in an "insurance contract," and that the Plan is not an insurance contract but rather a private indemnity agreement which is ancillary to the employment relationship which exists between Durand Glass and its employees. *454 Durand points to various provisions of the Plan in support of its argument, i.e., that the Plan is terminable at the will of the board of directors of Durand Glass, and that the employees contribute nothing toward the cost of the Plan, which is entirely absorbed by Durand Glass.
We are satisfied that Durand's argument is misplaced for the Plan, as a matter of law, could not be a subrogee in the situation presented here. Durand entirely misapprehends the thrust of N.J.S.A. 59:9-2(e) which permits the public entity to benefit from collateral sources and precludes the plaintiffs from recovering from the Board any portion of Angie's medical expenses. If, for instance, this matter proceeded to trial, plaintiffs would have had to make a strategic election and decide whether to present evidence to the jury of Angie's medical expenses. Many plaintiffs' attorneys consider such evidence to have an influence upon a jury when it is arriving at a damage award. If plaintiffs chose to present that evidence, however, they would then have had to disclose to the court the payments made to Walter Hayes for Angie's medical care and treatment and to the extent any verdict included compensation for those expenses, those benefits would have to be deducted from that verdict.
Counsel represented to the trial court that no portion of the settlement represented compensation for medical expenses, and the order of December 18, 1992 which approved the settlement contained no provision for any payments to Walter Hayes or Inez West for their expenditures in this area. It makes no difference that the plaintiffs' claims against the Board were concluded by way of settlement, rather than by jury verdict. Kramer v. Sony Corp. of America, 201 N.J. Super. 314, 493 A.2d 36 (App.Div. 1985). However concluded, plaintiffs were not entitled to and did not receive compensation for medical expenses.
Because the plaintiffs were not entitled to receive compensation for those expenses from the Board, it must follow that the Plan could not recover for those expenses from the Board. Subrogation is an equitable device intended to effectuate an *455 obligation's ultimate discharge by the one who ought to pay it and thus to promote "essential justice" between the parties. Culver v. Insurance Co. of North America, 115 N.J. 451, 456, 559 A.2d 400 (1989). Because a subrogee's rights can rise no higher than those of the subrogor, Mayfair Fabrics v. Henley, 101 N.J. Super. 363, 244 A.2d 344 (Law Div. 1968), the Plan cannot, through subrogation, effect a recovery which Angie's parents could not achieve. If it were allowed to succeed against the Board, it would stand in a better position than those from whom its claim flows. Such a result is fundamentally inconsistent with the nature of subrogation, as well as with the intent of N.J.S.A. 59:9-2(e).
Durand Glass also relies upon paragraph J of Article XXII of the Plan which states:
The Plan has the right to subrogation if medical benefits are paid to or for a Participant with respect to an Accidental Injury, Illness or other occurrence for which another individual or organization may be directly or indirectly responsible. The Plan Administrator shall have the right to recover for the benefit of the Plan the value of such medical benefits from any such individual or organization. To the extent a the Participant (sic) (i) receives payment or other economic benefit from, or (ii) has released, absolved or otherwise forgiven, an individual or organization directly or indirectly responsible for an Accidental Injury, Illness or other occurrence for which such Participant has previously received payment of medical benefits, the Plan Administrator shall have the right to recover for the benefit of the Plan from such Participant the value of amounts received or the economic benefit of the rights so released by such Participant.
To the extent that Durand Glass relies upon the terms of its own Plan to assert its entitlement to subrogation from a public entity, we are not persuaded. If it is barred by statute from any recovery, it cannot circumvent that statutory bar through the technique of inserting such a clause within the Plan's own provisions. We cannot so easily disregard the legislative will expressed in N.J.S.A. 59:9-2(e).
Further, we are not persuaded by Durand's assertion that the Plan is not an insurance contract. It makes this contention in an attempt to avoid the clear bar of the second section of this statute. It is irrelevant for purposes of the statute whether the Plan is a nonprofit creation of Durand Glass for the benefit of its employees, or a commercial health insurance company, doing *456 lawful business in New Jersey. We are concerned with the substance of the claim, not the form in which it is presented and we are satisfied that Durand is not entitled to recover from the Board. Similarly, it is irrelevant for purposes of this statute that the Board had obtained liability insurance and that, as a result, the settlement proceeds are being paid by the Board's carrier, rather than by the Board directly. We have previously held that whether the public entity and its employees are insured "is not germane" under N.J.S.A. 59:9-2(e). Kramer v. Sony Corp. of America, supra, 201 N.J. Super. at 319, 493 A.2d 36. We noted in that case that "it is obvious that overall the cost of insurance to public entities reflects payments made on their behalf by their insurance carriers. Certainly in the long run savings made by insurance carriers will result in lower premiums." Ibid.
Durand also asserts that even if it is not allowed to pursue a claim of subrogation against the Board in light of the statutory provisions, it still is entitled to pursue a claim for reimbursement against the individual plaintiff, Walter Hayes, and that in consequence the declaratory judgment entered against it was erroneous. Its claim against Hayes rests upon a certain document which Hayes executed on February 23, 1987. It provided:
In the event of any payment for goods or services under this Plan, the Plan shall, to the extent of such payment, be subrogated to all the rights of recovery of the Participant arising out of any claim or cause of action which may accrue because of the alleged negligent conduct of a third party or due to any other third party action. Any such Participant hereby agrees to reimburse the Plan for any benefits paid hereunder out of any monies recovered from such third party as the result of judgment, settlement or otherwise; and such Participant hereby agrees to take such action, to furnish such information and assistance and to execute and deliver all necessary instruments as the Plan Administrator may require to facilitate the enforcement of their rights. This provision shall not apply, however, to a recovery obtained by a Participant from an insurance company on a policy under which such is entitled to indemnity as a named insured.
Durand asserts that this gives it an independent, contractual right to recover from Walter Hayes the amount which the Plan has expended for Angie Hayes's medical care and treatment.
*457 We do not agree. To permit the Plan to assert such a claim would be in clear disregard of the policy behind N.J.S.A. 59:9-2(e); it would achieve the forbidden result through another door.
Durand argues that the purpose of this agreement was to induce it to continue to provide coverage to Angie Hayes. We do not understand that Durand is asserting that it had an independent right to cease providing such coverage. Certainly, it does not point to any source for such an alleged right within the papers presented on this appeal. We consider the agreement executed by Walter Hayes to be unenforceable in the context of this lawsuit.
The remaining argument presented by Durand on this appeal is that the declaratory judgment was entered prematurely; it contends that it should have been afforded discovery. The discovery Durand seeks deals with its attempt to establish that Angie Hayes's injuries were in some manner due to "willful misconduct." Durand seeks to establish "willful misconduct" because that would, under N.J.S.A. 59:3-14(b), defeat the limitations of N.J.S.A. 59:9-2(e). We consider the argument to be without merit. N.J.S.A. 59:3-14 deals with the liability of a public employee. No public employee is a defendant in this lawsuit, however, and thus N.J.S.A. 59:3-14 is wholly inapplicable.
We have concluded that the declaratory judgment entered below should be affirmed.